IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

IN RE: §
§ CASE NO. 04-50004-L2-11
UNICO CONSTRUCTION COMPANY §

## MEMORANDUM OPINION DENYING MOTION
## FOR CONTEMPT SANCTIONS FOR VIOLATION OF STAY (doc # 252, 262, 263, 264)

Mid-Continent Casualty Company, Inc. ("Mid-Continent") filed, supplemented, and amended a motion for imposition of contempt sanctions against Somerset Independent School District and Somerset Independent School District Public Facility Corp. ("Somerset") for violation of the automatic stay (Bankruptcy Code § 362). For reasons set forth orally on the record at the hearing on June 16, as supplemented below, and by separate order issued this date, the motion is denied.

FACTS

The Court assumes the facts alleged by Mid-Continent (along with review of the Court's own docket) to be correct.[1]

Mid-Continent is a commercial surety. Unico was in the construction business and contracted with Mid-Continent to issue a performance bond for Unico's contract to construct facilities for Somerset. Mr. and Mrs. Juarez, Unico's stockholders, and Unico agreed to indemnify Mid-Continent for any sums that Mid-Continent was required to pay under the bond.

Somerset sued Unico in state court, alleging negligent construction. Maryland Casualty Co. and Scottsdale Insurance Co. (Unico's liability insurers) were also defendants in the lawsuit. Mid-Continent was not a defendant. Mr. and Mrs. Juarez and Unico (the "Debtors") then filed their bankruptcy cases in this bankruptcy court on January 5, 2004.

On January 14, 2004, Somerset filed a motion for relief from the stay (docket # 5) to proceed with the lawsuit against the insurance companies. No objection to the motion was filed by Mid-Continent or by any other party. When the motion came on for hearing on February 11, 2005, the only party appearing in court was Somerset, which presented a default order, in "standard" form, allowing Somerset to proceed in the state court .[2] The order provided: "... Plaintiffs may proceed

---

[1] The facts are either drawn directly from the docket sheets and the claims register maintained by the clerk in this case or they are taken from Mid-Continent's Amended Motion for Order to Show Cause Why Somerset ...." docket # 262.

[2] The bankruptcy judges of the Southern District of Texas adjudicate over 350 motions for relief from the stay each week. Certain "standard" practices have developed. Among these, it is "standard" for a debtor to consent to relief from the stay to allow a plaintiff to proceed against

only against and to the extent of Debtor's Insurance policies, but may not proceed against Debtor's assets without further order of this Court" (docket # 15).

Mid-Continent filed a proof of claim against Mr. and Mrs. Juarez on February 12, 2004, and filed proofs of claim against Unico on February 17, 2004.

Mid-Continent alleges that Somerset filed a First Amended Complaint in state court naming Mid-Continent as a defendant on March 22, 2004, and that service of the amended complaint was made on Mid-Continent on July 14.

The Debtors and Mid-Continent were actively adverse from the beginning of the case. The Debtors filed an objection to Mid-Continent's claims on April 2 (docket # 37). Mid-Continent filed a motion to allow it to file a competing chapter 11 plan on April 30 (docket # 61) and a motion to appoint an examiner on May 27 (docket # 75).

On June 9, 2004, the US Trustee filed a motion to appoint a chapter 7 trustee for cause.[3] That motion was granted on June 23 (dockets ## 94, 98). Separate trustees were appointed for the Unico case and the Juarez case. The trustees thus succeeded to the Debtors' objection to Mid-Continent's claims, and the hearing on the objection was postponed several times to allow the trustees to become familiar with the case and to allow the parties to discuss settlement.

The chapter 11 trustees and Mid-Continent settled the objection to Mid-Continent's claims. An agreed order was entered on August 19, 2004 (docket # 181). Mid-Continent alleges that it did not assert any potential claim related to the Somerset contract and that it settled the objection to claim without inclusion of any liability for the Somerset contract because of Somerset's

---

insurance policy proceeds if the debtor does not expect total claims against the insurance policy to exceed policy limits. The "standard" order does not authorize the plaintiff to execute a judgment against property of the estate. *See* comments of the chapter 7 trustee's counsel at the hearing on Mid-Continent's motion on June 16, 2005.

[3]   The motion alleges that: "Cause exists to direct appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104(a)(1) because the Debtors (a) failed to disclose the 2003 Case in its voluntary petition; (b) failed to disclose all their assets; (c) made post-petition payments on pre-petition debt without court approval; (d) entered into oil and gas leases without court approval; (e) retained professionals to prepare tax returns without court approval; (f) failed to file accurate and complete operating reports; and (g) failed to thoroughly explain the Debtors' post-petition revenues and disbursements. Further, there exist irreconcilable conflicts of interest because Unico is a creditor of Mr. and Mrs. Juarez and vice versa. Mr. and Mrs. Juarez also may be co-obligors or guarantors on some of the Unico's liabilities, such as those owed to LNB and Mid-Continent. The UST is of the opinion that the appointment of an independent, disinterested person is necessary to administer these estates and to investigate any chapter 5 causes of action that might exist."

representations that it would proceed only against insurance policies.[4]

The chapter 11 trustees then moved to convert this case to chapter 11. The case was converted and substantial property was sold.

MID-CONTINENT'S ARGUMENT

<u>Mid-Continent Argues That Filing The First Amended Complaint Was a Violation of the Automatic Stay Or a Violation of This Court's Order Granting Relief from the Stay</u>

Bankruptcy Code § 362(a) provides that the filing of a bankruptcy case operates as a stay of the continuation of a civil proceeding against the debtor,[5] of an act to obtain possession of property of the estate or to exercise control over property of the estate,[6] and of an act to collect a pre-petition claim from the debtor.[7]  There is no provision for a stay of any act against a person who is not the debtor in the bankruptcy case.[8]

Mid-Continent concedes that "Ordinarily, the automatic stay under section 362 does not extend to actions against parties other than the debtor."[9]  Then Mid-Continent cites three cases as establishing exceptions to that rule, none of which involve commercial sureties and none of which avail Mid-Continent in this case.

*U.S. v. Dos Cabezas Corp.* 995 F.2d 1486 (9th Cir. 1993) merely includes, in footnote 3, a recognition that some cases have recognized limited exceptions, especially to issue an injunction. *Dos Cabezas* does not, itself, recognize the stay extending to non-debtors.  Therefore, the reference is *dictum*.  Actually, *Dos Cabezas* is more properly read to hold that the stay does not apply to suits against non-debtors.

---

[4]  While not significant to this decision, the Court finds that to be a fragile argument since Mid-Continent had been served with the First Amended Petition over a month prior to the settlement.  But this appears to be an estoppel argument that can be considered by the state court.

[5]  Bankruptcy Code § 362(a)(1).

[6]  Bankruptcy Code § 362(a)(3).

[7]  Bankruptcy Code § 362(a)(6).

[8]  *But compare* Bankruptcy Code § 1301 that provides such a stay for <u>non</u>-commercial sureties in chapter 13 cases.  Not only is that relief not available to commercial sureties (§ 1301(a)(1)), even as to <u>non</u>-commercial sureties it is limited to chapter 13 cases and does not apply outside of chapter 13.  This case was first filed as a chapter 11 case and was converted to chapter 7.  It was not, and cannot be, a chapter 13 case, *see* Bankruptcy Code § 109(e).

[9]  Docket # 262, paragraph 11.

*A.H. Robins Co. Inc. v. Piccinin* 788 F.2d 994 (4th Cir. 1986) actually deals with the power of the bankruptcy court to issue an injunction to stay suits against the debtor's insurance companies and to centralize product liability litigation in the bankruptcy court to preserve the liability insurance policy proceeds that were essential to the debtor's reorganization. In its decision, the Fourth Circuit discusses whether such suits might be violations of the automatic stay. But the cases that it discusses hold that the suits are not violations of section 362(a)(1). And to the extent that they involve insurance proceeds, they are distinguishable from suits involving commercial sureties (as discussed below).

*S.I. Acquisition, Inc. v. Eastway Delivery* 817 F.2d 1142 (5th Cir. 1987) deals with whether actions to pierce the corporate veil are property of the estate. In its decision, the Fifth Circuit merely recognizes that "some courts"[10] have differed from the established jurisprudence in the Fifth Circuit that " ... a 362(a)(1) stay is available only for the debtor's benefit and does not prohibit actions against nonbankruptcy third parties or codefendants."[11] The Fifth Circuit specifically refers to its decision in *GATX Aircraft Corp. v M/V Courtney Leigh* 768 F.2d 711 (5th Cir. 1985) for the proposition that the stay does not apply to "nonbankrupt co-guarantors." The Fifth Circuit found that the automatic stay had been violated because the cause of action belonged to the debtor and therefore was property of the estate.

Liability insurance policies have engendered substantial litigation because policy rights ("ownership" of the policy) belong to the debtor and thus are property of the estate whereas the important asset (policy proceeds) are more difficult to classify. They are paid to plaintiffs but are paid for the benefit of the debtor. Cases like *A.H. Robins* hold that there is sufficient identity of interests for the bankruptcy court to have jurisdiction to enjoin actions against the insurer in order to preserve the policy proceeds for the benefit of all creditors, and not just the first creditors to bring suit against the insurer. But surety contracts are different:

> An insurance policy should be distinguished from other sources of indemnity, such as a guaranty ... These differences support the conclusion that an action against a guarantor or similar party is not stayed even if actions against insurers are stayed.[12]

Therefore, whether or not the § 362 stay might have applied to the insurance policies issued by Maryland Casualty Co. and Scottsdale Insurance Co., the modicum of doubt was sufficient reason for Somerset to file a motion to lift the stay. But the difference between insurance policies and surety bonds is such that the bond cannot be considered property of the estate and the stay of § 362(a)(3) does not apply. And for the same reason the reservation in the Court's order (that Somerset could not proceed against the Debtor's assets) cannot reasonably be interpreted to prohibit Somerset from suing Mid-Continent on its surety bond. The surety's liability to Somerset *vel non* is simply not property of the estate.

---

10   *S.I. Acquisitions*, at 1148.

11   *Id*. at 1147.

12   *Collier on Bankruptcy, 15th Ed.* ¶ 362.03[5][b], last paragraph.

<u>Mid-Continent Argues that It Is Not Liable Under The Bond</u>

In paragraphs 13 through 15 of its Amended Motion, Mid-Continent argues that Texas law holds that the liability of a surety is determined by the language of the bond itself and that Somerset's claim is not covered by the bond. Mid-Continent also argues that the bardate for filing a suit against it has run and therefore Somerset's suit is time barred. Finally, Mid-Continent argues that the Debtor is an essential party under state law in any lawsuit by Somerset against Mid-Continent. All that may be correct. But those are matters best left to the state court to determine.

Bankruptcy Court jurisdiction is limited to proceedings arising under, arising in, and related to bankruptcy cases.[13]  The bankruptcy court has jurisdiction if the matter could conceivably have any effect on the disposition of the bankruptcy case.[14]  And Mid-Continent argues that its only relationship to Somerset is as surety for the Debtors

Mid-Continent alleges that it is not liable to Somerset under state law. Somerset alleges that Mid-Continent's liability is direct, not arising under the surety bond.[15]  Therefore, both Mid-Continent and Somerset allege that the resolution of their dispute has no effect on this bankruptcy case.

Mid-Continent's alternative argument is that if it is liable to Somerset under the bond, then the Debtors are liable to Mid-Continent for indemnity. Therefore, Mid-Continent argues, Somerset's suit against Mid-Continent is a suit against the Debtors' assets or property. That argument has been discussed and rejected by *Colliers* and by this opinion, above. But careful analysis indicates that even if Somerset were successful, that judgment would have no effect on the estate because the amount of claims against the estate would not increase. The Debtors could not be liable <u>both</u> to Mid-Continent <u>and</u> to Somerset.

The dispute between Somerset and Mid-Continent is substantial and is based purely on state law. The resolution of that dispute is inconsequential to the estate. Therefore, since a claim has been filed and is pending decision in the state court on a matter related to a bankruptcy case but not arising under title 11 or arising in a case under title 11, since the dispute between Somerset and Mid-Continent could not have been commenced in federal court absent bankruptcy jurisdiction, and out of respect for state law and in the interest of comity with state courts, this court would abstain from deciding the issue under 28 U.S.C. § 1334(c)(1) and (2).

<u>Mid-Continent's Alternative Motion to Amend Its Proof of Claim</u>

Mid-Continent argues that it settled the Debtor/Trustee's objection to its proof of claim on the assumption that Somerset would not sue Mid-Continent on the bond. Mid-Continent argues that if the First Amended Complaint is allowed to stand then Mid-Continent should be allowed to amend

---

[13]  28 U.S.C. § 1334.

[14]  *In the Matter of Wood*, 825 F.2d 90 (5th Cir. 1987).

[15]  *See* docket # 262.

its proof of claim, notwithstanding the settlement, to increase its claim by the amount that it must pay Somerset, if any, and the expenses of that lawsuit.

The Court declines to adjudicate that issue at this time.  First, Mid-Continent's motion merely requested permission for Mid-Continent to amend its proof of claim.  Under bankruptcy rules, a proof of claim may be amended at any time before distributions, so Mid-Continent does not need relief from the Court to do that.  What Mid-Continent apparently wants is rescission of the settlement with the trustee.  The motion did not ask for recession of the settlement agreement and therefore the Court declines to grant that relief.  Second, despite Mid-Continent's argument that it was deceived into settling because Somerset had led it to believe that Mid-Continent would not be sued, the Court's records show that the settlement was authorized over a month after Mid-Continent was served the First Amended Petition in the state court lawsuit.

CONCLUSION

The motion to hold Somerset in contempt is denied because (i) the Court concludes that filing the First Amended Complaint against Mid-Continent was not a violation of the automatic stay, (ii) filing the First Amended Complaint did not violate the Court's order because an action against Mid-Continent was not an action against the "Debtor's assets", and (iii) Mid-Continent's liability *vel non* to Somerset is a matter best left to state court.

SIGNED   July 12, 2005

_Wesley W. Steen_

_____

WESLEY W. STEEN
UNITED STATES BANKRUPTCY JUDGE